United States District Court
Southern District of Texas
**ENTERED**
February 23, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ERIN E.,[1] on behalf of J.M., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 4:22-cv-2195 |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | § § § § | |
| *Defendant.* | § § | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Erin E. ("Plaintiff") filed this suit seeking judicial review of an administrative decision on behalf of her minor son, J.M. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g).[2] Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim on behalf of her minor child for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"). The Parties filed cross-motions for summary judgment. Pl.'s MSJ, ECF No. 11; Def.'s MSJ,

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On February 14, 2023, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 14.

ECF No. 18. Plaintiff seeks an order to reverse the Commissioner's decision and remand for further consideration, arguing that the Administrative Law Judge ("ALJ") wrongly rejected certain medical opinions, failed to adequately explain his reasoning, and was not properly appointed. The Commissioner counters that any error was harmless, substantial evidence supports the ALJ's decision, and the ALJ was properly appointed. Based on the briefing, the record, and the applicable law, the Court agrees with the Commissioner's arguments in all respects. Therefore, Plaintiff's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.

## I.    BACKGROUND

Plaintiff is the mother of J.M., a minor child who is currently in grade school. R. 484-85.[3] Plaintiff alleges a disability onset date of July 1, 2016, at which time J.M. was in preschool. R. 185, 485. On August 11, 2016, Plaintiff filed an application on J.M.'s behalf for SSI benefits under Title XVI of the Act. R. 185. Plaintiff based her application on J.M.'s attention-deficit hyperactivity disorder ("ADHD"). R. 29, 210-19, 224. The Commissioner denied Plaintiff's application initially, R. 103-07, and on reconsideration, R. 124-28.

Plaintiff requested a hearing before an ALJ. R. 129. After a hearing, the ALJ found that J.M. was not disabled. R. 26-44, 55. Plaintiff appealed to the Northern

---

[3] "R." citations refer to the electronically filed Administrative Record. ECF No. 10.

District of Georgia,[4] after which the Commissioner's decision was reversed and remanded for further consideration. R. 552-80.

Upon remand, Plaintiff was afforded a new hearing with a different ALJ. R. 496. On August 11, 2021, after a hearing, the ALJ issued a written decision again denying benefits. R. 484-90. The ALJ found that J.M. had severe impairments, including ADHD, borderline intellectual functioning, learning disorder in reading and math, and an expressive language disorder. R. 485. In the ALJ's functional equivalency determination at step three, the ALJ found that J.M. had a marked limitation in the domain of interacting and relating with others.[5] R. 486. But the ALJ found less than a marked limitation or no limitation in all other domains of functioning, resulting in a finding of not disabled. R. 486, 489-90. Plaintiff sought review with the Appeals Council, which was denied. R. 469. Plaintiff now appeals the ALJ's decision under 42 U.S.C. § 405(g). ECF No. 1.

## II.    STANDARD OF REVIEW

The Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

---

[4] Plaintiff lived in Georgia until 2022 and has since relocated to Houston. ECF No. 1; R. 475.

[5] A child's severe impairment will be deemed functionally equivalent to a listed disability if the ALJ finds an "extreme" limitation in one, or a "marked" limitation in two, of the six domains of functioning. *See* 20 C.F.R. § 416.926a(b)(1), (d).

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence

4

preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   APPLICABLE LAW

The Act provides for SSI benefits to be paid to eligible individuals based on age or disability, with certain income restrictions. *See* 42 U.S.C. §§ 1381a, 1382(a). The determination of disability for individuals under the age of 18 requires a showing of "a medically determinable physical or mental impairment, which results in marked and severe functional limitations." *Id.* § 1382c(a)(3)(C)(1). Any mental or physical impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner employs "a three-step evaluation" to determine whether a child is disabled under the Act. *Swist ex rel. Green v. Barnhart*, 177 Fed. App'x 414, 416 (5th Cir. 2006). "For a child to be disabled under the meaning of the Act, the child must: (1) not be engaged in substantial gainful activity; (2) have an impairment that is 'severe'; and (3) have an impairment that 'meets, medically equals, or functionally equals' the impairments listed in the disability regulations." *Richard ex rel. Z.N.F. v. Astrue*, 480 Fed. App'x 773, 776 (5th Cir. 2012) (summarizing 20 C.F.R. § 416.924(a)-(d)). The claimant bears the burden of proof at all three steps. *See Holliday ex rel. D.H. v. Saul*, No. CV H-18-1412, 2019 WL 3323748, at *6 (S.D. Tex. July 9, 2019), *report and recommendation adopted sub nom. Holliday a/n/f of D.H. v. Saul*, No. CV H-18-1412, 2019 WL 3318559 (S.D. Tex. July 24, 2019) (citing *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991)).

Under the third step, the ALJ performs a "functional equivalence" evaluation, which asks whether the child's impairments result in an "extreme" limitation in one, or a "marked" limitation in two, of the following six domains: (i) "acquiring and using information"; (ii) "attending and completing tasks"; (iii) "interacting and relating with others"; (iv) "moving about and manipulating objects"; (v) "caring for oneself"; and (vi) "health and physical well-being." *Richard*, 480 Fed. App'x at 777 (summarizing 20 C.F.R. § 416.926a(b)(1), (d)). An impairment will result in a "marked" limitation in that domain if it "interferes seriously with [the child's] ability

6

to independently initiate, sustain, or complete activities," which may be comparable to "standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). An impairment will result in an "extreme" limitation in that domain if it "interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities;" however, it does not necessarily mean a complete lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3). To evaluate functioning under the six domains, the ALJ must "examine all the information" in the record and compare the child's "functioning to the typical functioning of children [the same] age who do not have impairments." *Id.* § 416.926a(f)(1).

## IV.   ANALYSIS

Plaintiff raises four issues. First, Plaintiff argues that the ALJ failed to evaluate one of the medical opinions in the record. Second, Plaintiff takes issue with the ALJ's persuasiveness finding for the speech-language pathologist's opinion. Third, Plaintiff argues the ALJ failed to expressly compare J.M. to children of the same age without impairments in each domain of functioning. Finally, Plaintiff contends that the ALJ who denied her claims was not properly appointed. ECF No. 11 at 8-9. The Commissioner responds that substantial evidence supports the ALJ's decision, and any failure to fully articulate how the evidence was considered is harmless error. ECF No. 18-1 at 17-31. The Commissioner also responds that the

ALJ was properly appointed and Plaintiff's arguments to the contrary have been rejected by nearly every court to have considered them. *Id.* at 6-14. The Court finds that the ALJ's functional equivalence finding is supported by substantial evidence and any error that may have occurred was harmless. And although Plaintiff fails to satisfy her evidentiary burden, the Court also agrees with the majority of courts that Acting Commissioner Nancy Berryhill properly appointed the ALJ here.

**A.   The ALJ Did Not Fail to Consider a Medical Opinion in the Record, and Regardless, Any Error Was Harmless.**

Plaintiff argues that the ALJ erred by failing to evaluate one of the medical opinions in the record:

> [J.M.]'s delay in phonological processing and Speech/language deficits and his ADHD impacts his overall functioning in the general education classroom and his ability to perform grade level AKS standards as that of his peers. Overall, [J.M.] may learn at a slower rate, retain less information, and/or require more time to grasp concepts and skills than the average student.

R. 788. Plaintiff attributes these statements to Dr. Diana Bondy and describes the conclusions as a "medical opinion." ECF No. 11 at 9-10. According to Plaintiff, the ALJ therefore erred by "reject[ing] a medical opinion without an explanation." *Id.* at 10 (quotation omitted).

**1.   *The cited record is not a medical opinion.***

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) . . . ." 20

C.F.R. § 416.927(a)(1). An ALJ must "evaluate every medical opinion" received and consider how much weight to attribute to each. *Id.* § 416.927(b)-(c). Thus, it is generally true that an "ALJ cannot reject a medical opinion without an explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (quotation omitted). However, ALJs are not required to articulate how they considered opinions from nonmedical sources, unless such an opinion is afforded greater weight than a medical opinion. 20 C.F.R. § 416.927(f)(2).

What Plaintiff points to are statements within an individual education program ("IEP") report in J.M.'s education records. R. 785. The pertinent records are labeled in the administrative transcript as "Education Records - Non Medical." ECF No. 10-22, 10-23. The initial IEP report does indicate that Dr. Bondy administered certain tests to J.M. in the fields of psychological processing and intellectual functioning. R. 786. However, Dr. Bondy or J.M.'s teacher also administered other assessments to Plaintiff. R. 785. Still others indicate no involvement from Dr. Bondy whatsoever. R. 787 (academic achievement and other information). The stated purpose of those tests was to develop an initial IEP for J.M., R. 783, not to determine the extent of any medical disability. In other words, it is not obvious from the record whether those statements were ever intended to be considered as a "medical opinion."

More importantly, there is no indication that the section of the IEP Plaintiff

relies on contains *any* opinions Dr. Bondy formulated.[6] Nowhere is Bondy's name affixed to the statements Plaintiff argues the ALJ failed to consider. R. 788. Instead, the quoted paragraph appears at the end of Section IV of the IEP report, which is titled "Present Levels of Academic Achievement and Functional Performance." R. 784. An overview of the results of those assessments appears on the same page, but those statements are attributed to "the team." *Id.* Indeed, the stated results of the initial IEP confirm the view that any opinions expressed in that section are collective: "The team finds [J.M.] eligible for Special Education services" based on the assessments cited in the IEP report and other "Student Support Team (SST) data." *Id.* The IEP report itself was the result of a team meeting held on April 28, 2021, at which Dr. Bondy was *not* present. R. 805-06. Although Dr. Bondy was listed as a team member present for J.M.'s special education eligibility meeting on April 19, 2021, R. 812, 826, that was also a team decision to which Plaintiff, J.M.'s teacher, and other nonmedical sources agreed. R. 826-30. Because none of the quoted statements in those reports can be attributed solely to Dr. Bondy, the record is not a

---

[6] Dr. Diana Bondy is a school psychologist. R. 785, 828. Nowhere is it indicated whether Bondy is a doctor—instead, she is referred to in the record as either "D. Bondy" or "Ms. Bondy." R. 816, 829. Regardless, the term "acceptable medical source" is defined to include any "licensed or certified school psychologist" for the limited purposes of "impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only." 20 C.F.R. § 416.902(a)(2)(ii). But that definition does not include educational personnel such as "school teachers" or "counselors." *Id.* § 416.902(j)(2). Thus, to the extent any statements reflect the combined conclusions of a team that includes other nonmedical sources, the statement cannot be deemed a "medical opinion."

"medical opinion," and the ALJ did not err when he failed to articulate how those statements were considered.

### 2. *Even if the IEP was a medical opinion, any error was harmless.*

Assuming *arguendo* the statements Plaintiff describes qualify as a "medical opinion," remand is not warranted for harmless error. It is the claimant's burden "to show that the ALJ's 'error was prejudicial.'" *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (quotation omitted). "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Tyler v. Saul*, No. CV H-18-3329, 2020 WL 3549684, at *7 (S.D. Tex. Mar. 2, 2020) (quotation omitted); *accord Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). However, courts may not reweigh evidence on appeal. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

At the outset, Plaintiff cannot show the ALJ failed to consider the purported medical opinion. Indeed, the ALJ expressly reviewed and cited those records in the decision. R. 488-89. Summarizing the same IEP report from April 28, 2021, R. 786, the ALJ noted that J.M.'s "full-scale IQ was determined to be 73, which only falls in the borderline range," R. 489. The purported "medical opinion" Plaintiff relies on appears only three pages later within that same record. R. 788. Plaintiff also testified about J.M.'s IEP at the hearing, and the ALJ paraphrased that testimony in the decision. R. 487, 502-07. Because the ALJ's decision establishes that the ALJ *did*

consider the IEP report, Plaintiff must instead "show that if the ALJ had given further explanation, then [he] would have adopted [it]." *Miller*, 2023 WL 234773, at *4.

To show prejudice, Plaintiff cites a different statement from that page in the record, indicating that J.M. "struggles with adding and subtracting 3 digits with regrouping and determining the correct strategy to answer word problems." ECF No. 11 at 11; R. 788. Plaintiff argues that such evidence is relevant to Domain I, which may include "difficulty solving mathematics questions or computing arithmetic answers." 20 C.F.R. § 416.926a(g)(3)(iv). Without explaining what math questions a child of the same age without ADHD should be able to perform, Plaintiff asserts that a "marked" limitation on Domain I "is conceivable." ECF No. 11 at 11. Plaintiff failed to "show that if the ALJ had given further explanation, then [he] would have adopted [the purported opinion]." *Miller*, 2023 WL 234773, at *4.

Indeed, the ALJ was already aware of J.M.'s struggles with mathematics, as evidenced by the finding that J.M. had several severe impairments, including a "learning disorder in reading and math." R. 485. Plaintiff's argument also ignores the description of J.M.'s "functional strengths" appearing on the same page, which includes the ability "to add and subtract multiple digits without regrouping and determine < = > between 2 and 3 digit numbers." R. 788. J.M.'s ability to perform some types of mathematical equations, but not more complex equations, is fully consistent with the ALJ's finding that J.M. has some limitation, albeit "less than a

marked limitation," in the domain of acquiring and using information. R. 486.

Plaintiff thus fails to carry her burden to show that the ALJ committed prejudicial

error when he did not explain how the purported medical opinion was evaluated.

### B.      Any Error Due to the ALJ's Rejection of the Speech-Language Pathologist's Opinion was Harmless.

Plaintiff next argues that the ALJ failed to properly assess the opinion of

J.M.'s speech-language pathologist, Andrea Young. ECF No. 11 at 11-13. In April

2021, Young administered several oral and written language tests to evaluate J.M.

R. 832-34. Those tests revealed average to below-average scores in most areas; only

grammaticality judgment was rated as two standard deviations below the mean.

R. 834. Young then summarized the tests as follows: "Results of this evaluation

indicate that *Alexandra* has a language disorder. *Her* strengths are articulation, voice,

and oral motor skills." R. 835 (emphasis added). The ALJ thus found Young's

opinion not persuasive due to "internal inconsistencies," including the reference to

J.M. by an incorrect name and gender. R. 489. Plaintiff argues those mistakes were

"a mere scrivener's error," and Young's opinion was consistent with the test results.

ECF No. 11 at 12.

Even assuming *arguendo* the ALJ improperly rejected Young's opinion due

to what Plaintiff deems a "scrivener's error,"[7] Plaintiff supplies no argument how

---

[7] The Court disagrees that such an error can be dismissed as a mere "scrivener's error," as it calls into question whether the listed test results are also those of J.M. or some other child. Moreover, Plaintiff's cited cases refer only to minor errors in an ALJ's decision. ECF No. 11 at 12. Plaintiff

this error was prejudicial. *See Miller*, 2023 WL 234773, at *3 (reasoning that "remand is warranted only if the ALJ's error was harmful" where ALJ failed to explain how medical opinions were found unpersuasive). Plaintiff bears the burden of showing prejudice. *Id.* Indeed, at most, Young opines that J.M. "has a language disorder," but with multiple strengths as well. R. 835. This is again fully consistent with the ALJ's finding that J.M. has "an expressive language disorder." R. 485. But even if adopted in full, nothing in Young's summary or the test results indicates a marked limitation in any domain. In reply, Plaintiff still offers no explanation of prejudice. ECF No. 22 at 2-3. Any error was therefore harmless.

### C.   Substantial Evidence Supports the ALJ's Functional Equivalence Determination.

Plaintiff argues that the ALJ failed to compare J.M. against similarly aged children in every domain of functioning. ECF No. 11 at 9. Plaintiff then selectively quotes language from the record potentially supporting greater limitations, while accusing the ALJ of also conducting a "selective review of the record." *Id.* at 14-15. Plaintiff does not assert that the ALJ failed to consider the evidence *at all*—the ALJ plainly did and some of Plaintiff's examples are cited in the ALJ's decision. R. 488, 686. Instead, Plaintiff argues that more explanation was necessary, as "the ALJ did not note examples of appropriate functioning" for each domain. ECF No. 11 at 13.

---

cites no cases for the proposition that such errors in a medical opinion are insufficient to render it internally inconsistent. *See* 20 C.F.R. § 416.927(c) (persuasiveness factors).

Had the ALJ "properly considered" that evidence, Plaintiff contends, then a different result "is conceivable." *Id.* at 15. In essence, however, Plaintiff simply disagrees with the ALJ's conclusion and asks the Court to reweigh the evidence. *Miller*, 2023 WL 234773, at *4 (court refused to reweigh the evidence to show that the ALJ's failure to explained was prejudicial). [8]

Generally, an "ALJ is not always required to do an exhaustive point-by-point discussion." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "[A]n ALJ is not required to explicitly discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Brodie v. Colvin*, No. 2:16-CV-479, 2017 WL 5891823, at *7 (S.D. Tex. Nov. 8, 2017), *report and recommendation adopted*, No. 2:16-CV-00479, 2017 WL 5749561 (S.D. Tex. Nov. 27, 2017); *accord Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Instead, what typically matters is "whether substantial evidence supports the decision," and courts may not reweigh evidence or "substitute our judgment for the Commissioner's." *Garcia*, 880 F.3d at 704.

---

[8] Plaintiff also does not explain how the evidence cited would amount to a "marked" limitation. Plaintiff relies on several examples in 20 C.F.R. § 416.926a(h)(3), but that subsection plainly states that "the examples do not necessarily describe a 'marked' or 'extreme' limitation." Instead, a "marked" limitation only occurs when an impairment "interferes seriously" with day-to-day functioning, which may be established through "standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* § 416.926a(e)(2)(i). Although J.M. scored "below average" on certain standardized tests, Plaintiff does not assert that any of those test scores were two standard deviations below the mean. Nowhere does Plaintiff point to evidence that J.M.'s ADHD "interferes seriously" with his ability to function. Absent a showing of prejudice, any error is once again harmless. *See Miller*, 2023 WL 234773, at *3.

Plaintiff concedes that "[t]he ALJ recited the correct legal standard" when finding that J.M. had "less than marked" impairments in Domains I and II, *i.e.*, acquiring and using information and attending and completing tasks. ECF No. 11 at 13. Yet, Plaintiff insists that the ALJ's failure to "note examples of appropriate functioning for preschoolers or school-age children without impairments" is error. *Id.* Plaintiff's reliance on *Gongora v. Colvin*, No. CV G-15-263, 2016 WL 3916065 (S.D. Tex. June 22, 2016), *report and recommendation adopted*, No. 3:15-CV-263, 2016 WL 3906751 (S.D. Tex. July 14, 2016), for this proposition is misplaced. In *Gongora*, the ALJ rejected all medical opinions in the record and proceeded "to 'play doctor' by making his own independent medical assessments." *Id.* at *8. This was error warranting remand, as substantial evidence in the record *did not* support the ALJ's functional equivalence determination. *Id.* The district court additionally noted that the ALJ's decision as a whole, "clearly reflects that he did not compare G.I.B.'s functioning to that of a same-aged child without arthrogryposis and muscle alignment/fascia disorder, nor did he expressly assess how much assistance G.I.B. requires to function like a non-impaired same-aged child." *Id.*

Even accepting that case as persuasive authority, *Gongora* does not indicate that failure to articulate *alone* may result in remand. Instead, failure to "expressly assess" each domain may be an indication that the ALJ's functional assessment is not supported by substantial evidence. This case is distinguishable, however, as the

ALJ here reviewed the whole record. R. 487-90. The ALJ gave significant weight to certain medical opinions in the record, including a nurse practitioner's psychiatric evaluation and questionnaire from 2016, R. 489, which indicated at most slight impairment in each domain of functioning, R. 441-47. The mental consultative examiner's report, which the ALJ only gave "some weight," R. 489, likewise only indicated borderline intelligence with "academic achievement slightly below grade level." R. 438. The ALJ also found J.M.'s kindergarten teacher's 2017 questionnaire "partly persuasive," R. 489, which at most indicated slight problems in Domain II. R. 276-77. That questionnaire asked the respondent to "compare this child's functioning to that of same-aged children who do not have impairments." R. 275. Plaintiff does not take issue with *any* of those persuasiveness findings.

Moreover, the ALJ reviewed J.M.'s full psychiatric treatment history, as well as Plaintiff's testimony, which indicated that J.M.'s ADHD symptoms were generally mild and relieved with medication. R. 489, 500-02, 968, 970, 973, 976, 989. And as the Commissioner notes: "Impairments controlled by medication are not disabling." ECF No. 18-1 at 20 (citing *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). Plaintiff offers no counterargument in reply. Even if the ALJ's failure to provide specific examples for every functioning domain was somehow error, it was harmless, as substantial evidence in the record supports the ALJ's decision.

### D.      Acting Commissioner Berryhill Had Statutory Authority to Ratify the Appointment of the ALJ Who Decided Plaintiff's Case.

Plaintiff finally asserts that Nancy Berryhill "was a former and lapsed Acting Commissioner and thus she had no authority to appoint SSA ALJs," including the one who decided Plaintiff's case. ECF No. 11 at 9. Plaintiff's argument is premised on the Federal Vacancies Reform Act of 1998 ("FVRA"). 5 U.S.C. §§ 3345 *et seq.* In particular, the FVRA limits the amount of time a person may serve as an acting officer to: (1) "no longer than 210 days beginning on the date the vacancy occurs," or (2) "once a first or second nomination for the offices is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." *Id.* § 3346(a).

Plaintiff insists the second subsection is merely a "tolling provision" and does not permit an individual to serve as Acting Commissioner on two separate occasions. ECF No. 11 at 16-22. Despite eight pages of textualist arguments in support of this restrictive interpretation, Plaintiff does not state when Dennis Hansen became an ALJ, nor does Plaintiff explain how Acting Commissioner Berryhill was appointed or when her term ended. The only citation in the briefing relevant to this timeline is the Social Security Ruling ("SSR") stating that on July 16, 2018, in response to the Supreme Court's decision in *Lucia v. S.E.C.*, 585 U.S. ___, 138 S. Ct. 2044 (2018),[9]

---

[9] In *Lucia*, the Supreme Court held that the ALJs serving the SEC qualify as "officers" under the Appointments Clause, which required them to be appointed by a department head. 138 S. Ct. at 2051 & n.3; *see also* U.S. CONST. art. II, § 2, cl. 2.

"the Acting Commissioner of Social Security ratified the appointments of our ALJs and approved those appointments as her own." SSR 19-1p, 84 Fed. Reg. 9582-02 (Mar. 15, 2019).

In response, the Commissioner summarizes the events surrounding Berryhill's service, explaining that her initial 210-day period as Acting Commissioner ended on November 16, 2017, and she resumed her service on April 17, 2018, upon the nomination of Andrew Saul. ECF No. 18-1 at 6. But this brief timeline is not supported by citations to any evidence, and the Commissioner never addresses ALJ Hansen's service. Instead, the Commissioner urges the Court to follow "[t]he great majority of courts" to have addressed this question by focusing on the statute's use of the disjunctive particle "or." *Id.* at 8-9. The Commissioner thus concludes that the FVRA "establishes two timelines for acting service." *Id.* at 7.

Plaintiff's arguments are unsupported by fact or law. While Plaintiff argues that Acting Commissioner Berryhill lacked authority at the time to appoint the ALJ who oversaw this case, Plaintiff cites no supporting evidence. The facts of ALJ Hansen's appointment and Berryhill's service as Acting Commissioner are not in the record, and no exhibits are attached to Plaintiff's motion. All that is before the Court is argument of counsel. But in the absence of an actual case or controversy, the Court cannot give an advisory opinion premised solely on Plaintiff's statutory construction arguments and hypotheticals. *See* U.S. CONST. art. III, § 2, cl. 1; *U.S.*

*Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993). Plaintiff, as the moving party, has not met her summary judgment burden.

Moreover, even assuming the factual predicates for these arguments have been established, Plaintiff concedes that most courts have rejected this interpretation. ECF No. 11 at 19; *see also* ECF No. 18-1 at 10-11 n.8 (collecting cases). Indeed, this Court has already considered and rejected identical arguments on the merits. *See Lawrence T. v. Kijakazi*, No. 4:22-CV-903, 2023 WL 5808374, at *7-8 (S.D. Tex. Sept. 6, 2023). The sole outlier Plaintiff cites in support of her arguments, ECF No. 11 at 21, has since been reversed. *See Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022), *rev'd and remanded sub nom. Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023). Plaintiff never meaningfully counters the Commissioner's argument on the disjunctive nature of the statutory language. Plaintiff's additional arguments about the weight of Supreme Court dicta are unavailing.[10] For the same reasons the

---

[10] Plaintiff relies heavily on a single passage addressing the FVRA from *N.L.R.B. v. SW General, Inc.*: "In most cases, the statute permits acting service for '210 days beginning on the date the vacancy occurs'; tolls that time limit while a nomination is pending; and starts a new 210-day clock if the nomination is 'rejected . . . , withdrawn, or returned.'" 580 U.S. 288, 296 (2017) (quoting 5 U.S.C. §§ 3346(a)-(b)(1)). But the Supreme Court in *SW General* never purported to interpret § 3346—the sole controversy was whether 5 U.S.C. § 3345(a) prohibits nominees from serving as acting officers while their nomination is pending. *See* 580 U.S. at 298. The sentence Plaintiff relies on appears in the factual background section before any analysis has occurred. *See id.* at 293-96 (detailing history of FVRA and prior iterations). The mere fact that *SW General* referred in passing to § 3346 as "toll[ing]" the 210-day clock "[i]n most cases" is of no moment. Courts within the Fifth Circuit "are generally bound by Supreme Court dicta, especially when it is 'recent and detailed.'" *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016). While *SW General* may be "recent," a single offhand reference in a recitation of facts *preceding* the actual controversy and unaccompanied by any legal analysis hardly qualifies as "detailed." Even the Supreme Court expressly did not purport to describe how § 3346(a) operates in *all* cases. Every circuit court to

Court set forth in *Lawrence T.*, Acting Commissioner Berryhill had the statutory authority to resume her position and ratify the appointment of all pre-*Lucia* ALJs. Accordingly, the ALJ who oversaw Plaintiff's claims was properly appointed.

## V.   CONCLUSION

It is therefore **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 11, is **DENIED**. It is further **ORDERED** that the Commissioner's motion for summary judgment, ECF No. 18, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on February 23, 2024.

*Dena Palermo*
_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

consider these arguments has rejected them. *See Rush v. Kijakazi*, 65 F.4th 114, 122 (4th Cir. 2023); *Dahle*, 62 F.4th at 428. And despite some occasional successes by this outlier theory in other districts, *see, e.g.*, *Miller v. Comm'r of Soc. Sec.*, No. 4:21-CV-01007-O-BP, 2023 WL 3814551, at *7 (N.D. Tex. June 5, 2023), the Court remains unconvinced.